## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEPHEN PONS, CAROLINE COLEMAN, CHARLES BELLAVIA, and TERRI KLETZMAN, *on behalf of themselves and all others similarly situated*, | ) ) ) ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | No. 1:25-mc-91106-JEK |
|  | ) |  |
| WALTER KIDDE PORTABLE EQUIPMENT INC. d/b/a KIDDE SAFETY EQUIPMENT and BRK BRANDS INC., | ) ) ) |  |
|  | ) |  |
| Defendants. | ) ) |  |

## <u>MEMORANDUM AND ORDER ON</u>
## <u>PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER</u>

**KOBICK, J.**

This discovery dispute arises out of a consumer class action lawsuit concerning ionization-only smoke alarm devices that is pending in the United States District Court for the Northern District of California. *See Pons v. Walter Kidde Portable Equip. Inc.*, No. 23-cv-03436-MMC (N.D. Cal.). Invoking attorney-client privilege, Federal Rule of Civil Procedure 26(b)(4)(C), and the work-product doctrine, plaintiffs Stephen Pons, Caroline Coleman, Charles Bellavia, and Terri Kletzman, on behalf of themselves and all others similarly situated, have moved for a protective order against a subpoena for documents issued by defendant Walter Kidde Portable Equipment, Inc. to third-party fact witness Joseph Fleming. For the reasons that follow, that motion, which will be construed as a motion to quash, will be denied.

## BACKGROUND

Joseph Fleming is a former Deputy Fire Chief of the Boston Fire Department. ECF 3-1, ¶ 2. He is a "longtime, vocal advocate of restricting the use of ionization-only devices" and "has testified as an expert in numerous cases over the past couple of decades involving deaths or grave injuries in which an ionization device did not timely sound during a home fire." ECF 3, at 2. Between April and July 2024, he exchanged about twenty emails with plaintiffs' counsel regarding his potential engagement as an expert witness. ECF 3-1, ¶ 3. Ultimately, Fleming was not retained, but the plaintiffs subpoenaed Fleming as a fact witness for a February 27, 2025 deposition to testify about his participation on a committee of Underwriters Laboratories, Inc., which "sets the standards and protocols for laboratory testing of home smoke alarm products." *Id.* ¶¶ 4-5; ECF 3, at 2-3. As part of his work on that committee, Fleming supported the development of new fire testing requirements, which resulted in design changes to smoke detectors made by Kidde and co-defendant BRK Brands Inc. ECF 3, at 2.

On February 4, 2025, Kidde cross-served Fleming with a subpoena for a deposition set for February 28, 2025. ECF 3-2, at 5. The subpoena demanded that Fleming produce at the deposition "[a]ll documents and/or communications exchanged with plaintiffs, including any of their representatives, agents, and/or counsel, related to the above-captioned case." *Id.*; ECF 3-3, at 171:5-23. Neither Fleming nor the plaintiffs objected to this subpoena before the deposition. ECF 5, at 4-5.

The plaintiffs deposed Fleming on February 27, 2025 in Boston. ECF 3-1, ¶ 8. By agreement among the parties and Fleming, Kidde conducted its deposition of Fleming that same day. *Id.* ¶ 9. At the deposition, Kidde asked Fleming to turn over his subpoenaed communications with plaintiffs' counsel. *Id.* ¶ 10. Citing attorney-client privilege and the work-product doctrine,

plaintiffs' counsel objected and instructed Fleming to withhold the documents. *Id.* ¶¶ 12-13; ECF 3-3, at 172:12-23. Fleming complied and declined to produce the materials. ECF 3-1, ¶ 14; ECF 3-3, at 175:20-22. On redirect, Fleming stated that his deposition testimony did not rely on any information that plaintiffs' counsel had shared with him during their communications in the spring and summer of 2024. ECF 3-1, ¶ 15; ECF 3-3, at 339:2-11. That evening, following the deposition, the plaintiffs served objections to the subpoena, asserting that the communications are protected by attorney-client privilege, the consulting expert privilege, and the work-product doctrine. ECF 5, at 5; ECF 3-1, ¶ 17; ECF 3-4.[1] Kidde responded on March 7, 2025, refuting the plaintiffs' claims of privilege and demanding production of the emails by March 14, 2025. ECF 3-1, ¶ 19; ECF 3-5, at 2-3. The plaintiffs then filed this motion for a protective order on March 14, 2025. ECF 1.

That same day, the plaintiffs and Kidde also filed a joint letter in the underlying Northern District of California action, largely restating the arguments before this Court. *See* ECF 152, *Pons v. Walter Kidde Portable Equip. Inc.*, No. 23-cv-03436-MMC (N.D. Cal. Mar. 14, 2025). In the letter, the plaintiffs maintained that the communications are privileged, and that Federal Rule of Civil Procedure 45 requires resolution of the dispute in the District of Massachusetts because Kidde's subpoena mandates compliance in Boston. *Id.* at 4-5. Kidde disputed the plaintiffs' privilege claims, arguing that the Northern District of California could properly consider this issue and should declare the plaintiffs' privilege assertions improper. *Id.* at 2-3. The Magistrate Judge declined to grant Kidde's request or rule on the issue of privilege, expressing skepticism that the parties had adequately met and conferred and emphasizing the need for judicial economy, given

---

[1] In their motion for a protective order, the plaintiffs did not renew their claim of consulting expert privilege, and the Court accordingly does not address the argument here.

the instant motion before this Court. ECF 154, at 2-3, *Pons v. Walter Kidde Portable Equip. Inc.*, No. 23-cv-03436-MMC (N.D. Cal. Mar. 31, 2025).

## DISCUSSION

### I.    Jurisdiction.

The parties first dispute whether the plaintiffs' motion is properly before this Court. Under Federal Rule of Civil Procedure 26(c), a motion for a protective order should be filed "in the court where the action is pending." A motion to quash or modify a subpoena, in contrast, should be filed in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3); *see also Gardner v. Cape Cod Healthcare, Inc.*, 344 F.R.D. 127, 130-32 (D. Mass. 2023).

Because the plaintiffs are seeking a protective order, this motion should have been filed in the Court where the action is pending—that is, the Northern District of California. Nonetheless, though styled as a motion for a protective order, the plaintiffs cite Federal Rule of Civil Procedure 45(d)(3), not Federal Rule of Civil Procedure 26(c), and request relief that could be delivered by an order quashing the subpoena. *See* ECF 3, at 4. The plaintiffs also state that they "have no objection to the Court treating the instant motion as a motion to quash the document-production component of the Kidde Subpoena." ECF 16, at 2, n.1. The Court will accordingly construe the motion as a Rule 45(d)(3) motion to quash and deem it properly filed in the District of Massachusetts, the district in which compliance with Kidde's subpoena is sought.

### II.    Timeliness.

Kidde next raises two timeliness arguments in opposition to the plaintiffs' motion: first, that the plaintiffs failed to serve timely objections to the subpoena, and second, that the plaintiffs failed to timely file the instant motion. Both instances of tardiness, Kidde argues, waived the plaintiffs' privilege claims over the subpoenaed documents.

Objections to subpoenas must be "served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). "Failure to timely and properly object to the subpoena generally constitutes a waiver of all grounds for objection, including privilege." *Sacks Holdings, Inc. v. Vaidya*, No. 24-mc-80197-PHK, 2024 WL 4730424, at *3 (N.D. Cal. Nov. 7, 2024). However, when a nonparty is served with a subpoena, "'[o]nly the [nonparty] can prevent disclosure by objection. The party to whom the subpoenaed records pertain *cannot* simply object. Rather, a protective order or motion to quash the subpoena is required.'" *Miranda v. Hokinson*, No. 07-cv-0609-FMC-RCX, 2008 WL 11337227, at *2 (C.D. Cal. Dec. 12, 2008) (quoting Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial ¶ 11:2291 (2008 rev.)); *see* Fed. R. Civ. P. 45(d)(2)(B) (objections to a subpoena may be made by "[a] person commanded to produce documents or tangible things or to permit inspection"). Here, Kidde's subpoena was directed at Fleming, not the plaintiffs. ECF 3-2, at 5. Kidde's argument that the plaintiffs waived privilege by failing to object to the subpoena by February 18, 2025—14 days after service—is, accordingly, unavailing.

The timeframe for filing a motion to quash or modify a subpoena is less clear. Federal Rule of Civil Procedure 45(d)(3) empowers courts to quash a subpoena "[o]n timely motion," but "the term 'timely' is not defined in the rule." *Town of Grafton v. Pulte Homes of New Eng., LLC*, No. 12-cv-10524-TSH, 2014 WL 2155035, at *3 (D. Mass. May 21, 2014). "In general, courts have read the timeliness requirement to mean within the time set in the subpoena for compliance." *Id.*; *see also Canton v. U.S. Foods, Inc.*, No. 22-cv-04226-TLT-LJC, 2023 WL 4053798, at *3 (N.D. Cal. June 16, 2023). Still, "'[i]t is not appropriate . . . to rob [a party] of the opportunity to move to quash the subpoena because its good faith efforts to resolve the matter outside of Court made

its request untimely under some decisions interpreting Rule 45.'" *Canton*, 2023 WL 4053798, at *3 (citation omitted).

The plaintiffs did not demonstrate perfect diligence here. They failed to communicate their privilege concerns to Kidde until February 27, 2025, during the deposition and over three weeks after the subpoena was served. ECF 3-1, ¶¶ 10-17. And when Kidde responded to their objections on March 7, demanding production of the emails by March 14, the plaintiffs waited a week to file their motion in this Court. ECF 3-5, at 3; ECF 1. No justification has been offered for these delays. Nonetheless, the plaintiffs did communicate their privilege concerns before the February 28 compliance date specified by the subpoena and ultimately filed their motion within the time of compliance requested by Kidde's March 7 email. Under the circumstances, the motion was timely. *See Canton*, 2023 WL 4053798, at *3-4 (construing the plaintiff's objections in the parties' joint discovery statement, filed on the last day of the subpoenas' original required dates of compliance, as the plaintiff's motion to quash and deeming it timely filed, noting that the plaintiff sent an email objecting to the scope of the subpoenas four days after service and communicated with the defendants to try to narrow the dispute); *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 875 n.2 (N.D. Cal. 2022) (where "a subpoena recipient moves to quash after lodging a written objection to the subpoena, the motion to quash is timely so long as it is filed within a reasonable time after the conclusion of informal efforts to resolve the objections").

III. <u>Merits.</u>

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. 45(d)(3). Citing attorney-client privilege, Federal Rule of Civil Procedure 26(b)(4)(C), and the work-product doctrine, the plaintiffs urge the Court to

quash the subpoena and conclude that Kidde has failed to show that any exception or waiver to these protections applies. The Court disagrees and will address each argument in turn.

A.    Attorney-Client Privilege.

The plaintiffs assert that attorney-client privilege protects the emails between plaintiffs' counsel and Fleming that are listed in their privilege log. "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Because the underlying case in the Northern District of California asserts one state law claim—a violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*— the plaintiffs' invocation of attorney-client privilege is likewise determined by state law. *See* ECF 110, ¶¶ 116-23, *Pons v. Walter Kidde Portable Equip. Inc.*, No. 23-cv-03436-MMC (N.D. Cal. Aug. 26, 2024). To determine which state's privilege laws should govern here, the Court applies Massachusetts' choice of law rules, because Massachusetts "is the original forum for this Rule 45 . . . proceeding." *Bogard Constr., Inc. v. Oil Price Info. Serv., LLC*, 604 F. Supp. 3d 895, 900-01 (N.D. Cal. 2022); *see also City of Almaty v. Ablyazov*, No. 15-cv-05345-AJN-KHP, 2018 WL 11270080, at *1 (S.D.N.Y. July 23, 2018). Massachusetts has adopted a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole," looking to the Second Restatement as an "obvious source of guidance." *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631-32 (1985); *see also Bi-Rite Enters., Inc. v. Bruce Miner Co.*, 757 F.2d 440, 442 (1st Cir. 1985) (characterizing Massachusetts' approach to choice of law issues as an "'interest analysis' or 'most significant relationship' analysis"). "Under the Second Restatement, the Court applies the law of the state with the most significant relationship to the communications at issue." *Bogard Constr.*, 604 F. Supp. 3d at 901; *see also* Restatement (Second) of Conflict of Laws § 139 (October 2024 update). Because the communications at issue

were directed to Fleming, who lives in and was deposed in Massachusetts, the Court concludes that Massachusetts' privilege laws should apply. *See* Restatement (Second) of Conflict of Laws § 139 (explaining that "[t]he state which has the most significant relationship with a communication will usually be the state where the communication took place, which, as used in the rule of this Section, is the state . . . where a written statement was received").

In Massachusetts, attorney-client privilege applies "'(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.'" *Comm'r of Revenue v. Comcast Corp.*, 453 Mass. 293, 303 (2009) (quoting 8 J. Wigmore, Evidence § 2292 (McNaughton rev. ed. 1961)); *see also Att'y Gen. v. Facebook, Inc.*, 487 Mass. 109, 121 (2021) (the privilege "protects 'all confidential communications between a client and its attorney undertaken for the purpose of obtaining legal advice'" (quoting *Suffolk Constr. Co. v. Div. of Cap. Asset Mgmt.*, 449 Mass. 444, 448 (2007))). "[T]he purpose of the privilege is to enable clients to make full disclosure to legal counsel of all relevant facts . . . so that counsel may render fully informed legal advice, with the goal of promot[ing] broader public interests in the observance of law and administration of justice." *Facebook*, 487 Mass. at 121-22 (quotation marks omitted). However, because the privilege also "frustrate[s] the investigative or fact-finding process . . . [and] create[s] an inherent tension with society's need for full and complete disclosure of all relevant evidence during implementation of the judicial process," the privilege is "construed narrowly." *Id.* at 122 (quotation marks omitted). Thus, "[d]isclosing attorney-client communications to a third party . . . generally undermines the privilege," unless the third party's involvement is "'nearly indispensable or serve[s] some specialized purpose in

facilitating the attorney-client communications.'" *Comm'r of Revenue*, 453 Mass. at 306-07 (quoting *Cavallaro v. United States*, 284 F.3d 236, 249 (1st Cir. 2002)).

The communications listed on the plaintiffs' privilege log are not protected by attorney-client privilege. Plaintiffs' counsel represents the plaintiffs, not Fleming, who was deposed pursuant to a third-party subpoena issued under Federal Rule of Civil Procedure 45. *See* ECF 3-2, at 3, 5. Further, as the plaintiffs themselves represent, the challenged emails between plaintiffs' counsel and Fleming were exchanged as part of the plaintiffs' efforts to retain Fleming as an expert witness, not to provide him with legal advice. ECF 3, at 3; ECF 5-2, at 172:17-20; 178:12-13. Nor have the plaintiffs argued that the emails contained communications between them and their counsel regarding legal advice and that disclosure to Fleming was indispensable to facilitating that communication. In fact, the plaintiffs do not discuss why attorney-client privilege should attach to their emails at all in the briefing, and the privilege log reveals only that the challenged emails contain "discussion of legal theories of Plaintiffs' case and legal analysis of pending litigation." ECF 16-2, at 1-3. Accordingly, attorney-client privilege does not apply.

    B.    <u>Federal Rule of Civil Procedure 26(b)(4)(C).</u>

The plaintiffs next invoke Federal Rule of Civil Procedure 26(b)(4)(C), which protects "communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B) . . . except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C). Even though Fleming was not ultimately engaged as an expert, the plaintiffs contend that, in keeping with the spirit of Rule 26(b)(4)(C), the emails from

the spring and summer of 2024 should be protected from disclosure. *See* ECF 3, at 5-6; ECF 16, at 3-4.

The plaintiffs' argument is foreclosed by the text of Rule 26(b)(4)(C), because Fleming is not and never has been a "witness required to provide a report under Rule 26(a)(2)(B)." Fed. R. Civ. P. 26(b)(4)(C). The plaintiffs point to *Farrell v. United States Olympic & Paralympic Committee*, in which the Court extended work-product protection under Rule 26(b)(4)(C) to pre-retention conversations with the defendant's expert. No. 20-cv-01178-FJS-CFH, 2023 WL 9063637, at *5 (N.D.N.Y. Nov. 8, 2023). There, the Court explained that because "[a]ttorneys invariably vet and communicate with potential expert witnesses prior to their retention, . . . a bright-line rule that viewed the date of an expert's retention as the date on which privilege attaches . . . would lead to a particularly perverse result." *Id.* (quoting *Fed. Trade Comm'n v. Nat'l Urological Grp., Inc.*, No. 04-cv-3294-CAP, 2016 WL 11791898, at *2 (N.D. Ga. Aug. 25, 2016)). But in *Farrell* and the case it cites, *Federal Trade Commission v. National Urological Group, Inc.*, the pre-retention communications at issue involved experts who *were* ultimately retained and required to provide reports under Federal Rule of Civil Procedure 26(a)(2)(B)—and were not called as fact witnesses. *National Urological Group* noted this distinction, explaining that the expert was "not a fact witness." 2016 WL 11791898, at *2 (distinguishing *Bartram, LLC v. Landmark Am. Ins. Co.*, 10-cv-00028-SPM-GRJ, 2011 WL 284448, at *3 (N.D. Fl. Jan. 24, 2011), which held that a witness's pre-retention emails were not protected where the witness was first considered a "normal fact witness" and later was retained as a non-testifying witness). Here, Fleming was never retained as an expert and was instead subpoenaed as a fact witness, so neither *Farrell* nor *National Urological Group* supports quashing Kidde's document subpoena. The Court accordingly declines to extend Rule 26(b)(4)(C)'s protections over Fleming's communications with plaintiffs' counsel.

C.    Work-Product Doctrine.

Finally, the plaintiffs assert that the work-product doctrine protects their counsels' communications with Fleming. "[T]he attorney work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), is procedural in nature, and federal law applies." *Depina v. FedEx Ground Package Sys., Inc.*, 730 F. Supp. 3d 954, 957 (N.D. Cal. 2024); *see Felisberto v. Dumdey*, 541 F. Supp. 3d 142, 147 (D. Mass. 2021) ("[F]ederal courts apply federal law when addressing the work product doctrine, even in diversity cases lacking any federal question." (quotation marks omitted)). The doctrine "protects against disclosure of materials that a party, her attorney, or her representative prepares in anticipation of litigation, [but] it does not typically extend to the underlying facts contained within those materials." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004) (citations omitted). Its purpose is to "shelte[r] the mental processes of the attorney," *United States v. Nobles*, 422 U.S. 225, 238 (1975), and preserve for the lawyer "'a zone of privacy within which to prepare the client's case and plan strategy without undue interference,'" *Gulluni v. Levy*, 85 F.4th 76, 82-83 (1st Cir. 2023) (quoting *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014 (1st Cir. 1988)).

While the scope of material potentially covered by the work-product doctrine sweeps broadly, courts often sort work product into two categories. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (work product may encompass "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" by which "lawyers act . . . to protect their clients' interests"); *In re Grand Jury Subpoena*, 220 F.R.D. at 144. Opinion work product encompasses "'materials that contain the mental impressions, conclusions, opinions, or legal theories of an attorney,'" whereas ordinary work product is

"everything else that is eligible for protection as work product." *In re Grand Jury Subpoena*, 220 F.R.D. at 144 (quoting *In re San Juan*, 859 F.2d at 1014-15).

The challenged emails from Fleming to plaintiffs' counsel are not work product because they were not prepared by "[the plaintiffs], [their] attorney, or [their] representative." *Id.* at 141. However, the challenged emails from plaintiffs' counsel to Fleming contain opinion work product because, according to the privilege log, they were written by plaintiffs' counsel while preparing for litigation and include "discussion of legal theories of Plaintiffs' case and legal analysis of pending litigation." ECF 16-2, at 1-3. Kidde asserts that discovery of these emails is nonetheless proper because the plaintiffs have waived work-product protection over the emails, both by failing to timely share a privilege log and by sharing the information with Fleming, a third party. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) ("'Like other qualified privileges, [work-product protection] may be waived.'" (quoting *Nobles*, 422 U.S. at 239)). Kidde also contends that "[i]t is particularly inappropriate to shield plaintiffs' communications with Mr. Fleming from discovery when it was *plaintiffs*, not Kidde, who injected Mr. Fleming into this dispute." ECF 5, at 7. By designating Fleming as a fact witness, Kidde argues, the plaintiffs "put their communications with Mr. Fleming squarely at issue," such that "Kidde is entitled to discover the content of Mr. Fleming's communications with plaintiffs . . . and any bias or prejudice such communications may have introduced into Mr. Fleming's testimony." *Id.* at 7-8. The Court will address each of these arguments in turn.

       i.   *Privilege Log Waiver.*

Kidde first argues that the plaintiffs waived protection over the emails by failing to produce a privilege log. Under Federal Rule of Civil Procedure 45, "[a] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material

must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that . . . will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2). Courts have accordingly held that "[a] party that fails to submit a privilege log is deemed to waive the underlying privilege claim." *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001). Here, because the plaintiffs have since produced their privilege log alongside their reply, *see* ECF 16-2, the Court declines to find waiver on that basis, *see In re Dep't of Just. Subpoenas to ABC*, 263 F.R.D. 66, 69-72 (D. Mass. 2009) (applying reasonableness standard and determining that privilege was not waived by delay in providing privilege logs based on several mitigating factors).

### ii. Express Waiver by Disclosure.

Kidde next contends that the plaintiffs waived the privilege by sharing work product with Fleming, "a third party who was not and is not working for or at the direction of counsel." ECF 5, at 9-10. Disclosure of work product to a third party does not necessarily constitute waiver unless the work product was voluntarily shared with "'an adversary or a conduit to an adversary.'" *Sanmina Corp.*, 968 F.3d at 1121, 1123 (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010)) (describing such a disclosure to an adversary as an "express waiver"); *Blattman v. Scaramellino*, 891 F.3d 1, 5 (1st Cir. 2018) ("[D]isclosure of work-product to a third-party does not necessarily waive the protection; 'only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection.'" (quoting *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997))). This is because the doctrine "does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).

Fleming is not an adversary or potential adversary to the plaintiffs in the litigation. The communications at issue are between plaintiffs' counsel and Fleming, and they concern the plaintiffs' legal theories underpinning their case against Kidde and the other defendant in the underlying case. ECF 16-2, at 1-3. Plainly, the plaintiffs did not anticipate a dispute with Fleming when communicating these sensitive materials. *See Sanmina Corp.*, 968 F.3d at 1121 (the relevant question when determining whether a third party is a "potential adversary" is whether the third party "'could be [the plaintiffs'] adversary in the sort of litigation the [work-product documents] address'" (quoting *Deloitte*, 610 F.3d at 140)).

Nor could Fleming be considered a "conduit to an adversary." *Id.* That analysis usually involves "two discrete inquiries": (1) "whether the disclosing party has engaged in self-interested selective disclosure by revealing its work product to some adversaries but not to others," and (2) "whether the disclosing party had a reasonable basis for believing that the recipient would keep the disclosed material confidential," possibly because the parties shared "common litigation interests" or there was a confidentiality agreement. *Id.* (quotation marks omitted). Courts should also take into account "the totality of the circumstances," and, "guided by the . . . principle of fundamental fairness," consider whether "the disclosing party's conduct has reached a 'certain point of disclosure' towards his adversary such that 'fairness requires that his privilege shall cease, whether he intended that result or not.'" *Id.* at 1122 (quoting *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)).

Here, there is no sign that the plaintiffs engaged in "'self-interested selective disclosure'" when their counsel emailed Fleming in the spring and summer of 2024. *Id.* at 1123 ("'Selective disclosure involves disclosing work product to at least one adversary.'" (quoting *Deloitte*, 610 F.3d at 142)). And the privilege log reveals that, at the time, the plaintiffs did have "a reasonable basis

14

for believing that [Fleming] would keep the disclosed material confidential." *Id.* at 1121 (quotation marks omitted). Plaintiffs' counsel approached Fleming in the hope of retaining him as an expert witness. Had Fleming been retained as such, communications regarding the plaintiffs' legal theories likely would have enjoyed protection under Rule 26(b)(4)(C). The majority of the emails also appear to be part of threads beginning with emails labeled by plaintiffs' counsel as "Privileged & Confidential." *See* ECF 16-2, at 1-3. Accordingly, the emails from plaintiffs' counsel to Fleming did not amount to disclosure such that fairness mandates their production to Kidde on that ground.

### iii.  *Implied Waiver by Designation.*

In addition to express waiver by disclosure, a litigant may also impliedly waive work-product protection by "conduct that is inconsistent with the maintenance of secrecy against an adversary." *Sanmina Corp.*, 968 F.3d at 1123. Whether a party has impliedly waived work-product protections is analyzed based on the "totality of the circumstances," with the court considering "whether and to what extent fairness mandates the disclosure" of the documents at issue. *Id.* at 1124. The "overriding concern" is "the protection of the adversary process." *Id.*

The scope of an implied waiver "must be 'closely tailored . . . to the needs of the opposing party' and limited to what is necessary to rectify any unfair advantage gained by [the litigant] from its conduct." *Id.* (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003)). Furthermore, opinion work product, like the emails at issue here, is accorded greater protection than ordinary work product: a litigant must show that "'mental impressions are at issue in a case and the need for the material is compelling.'" *Id.* at 1125 (quoting *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)); *see also In re San Juan*, 859 F.2d at 1015 (ordinary work product usually only has "a qualified immunity, subject to a showing of substantial need and undue hardship," whereas opinion work product requires a "hardier showing"); Fed. R. Civ. P.

15

26(b)(3)(B) (instructing courts to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," even when work product is discoverable).

Kidde contends, and the Court agrees, that by choosing to depose Fleming as a fact witness, the plaintiffs "injected [him] into this dispute" and "put their communications with [him] squarely at issue." ECF 5, at 7. The plaintiffs knew of their counsels' earlier emails with Fleming and the fact that, in those emails, counsel had communicated sensitive information to him. Nevertheless, and notwithstanding that parties are afforded "very considerable latitude in inquiring into circumstances that may show bias on the part of the witness in favor of the party calling him," the plaintiffs chose to designate Fleming as a fact witness and subpoena him for testimony. *LNC Invs., Inc. v. First Fidelity Bank*, No. 92-cv-7584-CSH, 2000 WL 1182772, at *2 (S.D.N.Y. Aug. 21, 2000). In so doing, the plaintiffs "increased the possibility that [Kidde], its adversary in this matter, might obtain its protected work product, and thereby engaged in conduct inconsistent with the purposes of the privilege." *Sanmina Corp.*, 968 F.3d at 1124 (defendant acted inconsistently with the aims of work-product protection over attorney memoranda by sharing with the Internal Revenue Service a document that cited the memoranda). Kidde appropriately wishes to inspect Fleming's emails with plaintiffs' counsel to uncover "any bias or prejudice such communications may have introduced into Mr. Fleming's testimony." ECF 5, at 8. Under the circumstances, fairness requires disclosure of the emails, and Kidde has demonstrated that such disclosure is "'closely tailored . . . to [its] needs . . .' and limited to what is necessary to rectify any unfair advantage." *Sanmina Corp.*, 968 F.3d at 1124 (quoting *Bittaker*, 331 F.3d at 720).

Cases delineating the scope of work-product protection over attorneys' communications with hybrid expert and fact witnesses provide a helpful analogy. In those cases, courts have warned

16

against the potential gamesmanship that can arise when litigants seek to shield fact witnesses' communications with counsel from discovery by designating those witnesses as experts as well. In *United States v. Sierra Pacific Industries*, for example, the Court analyzed the 2010 amendment to Rule 26(b)(4)(C), which only provided for protection over attorney communications with reporting experts, and discussed in depth the Civil Rules Advisory Committee's decision to not protect attorney communications with non-reporting experts. No. S-09-cv-2445-KJM-EFB, 2011 WL 2119078, at *6-7 (E.D. Cal. May 26, 2011). Using the example of hybrid fact and expert employee witnesses, the Committee had noted "'obvious opportunities for mischief.'" *Id.* at *6 (quoting Minutes at 20, Civil Rules Advisory Committee Meeting (April 20-21, 2009)). The Court concluded that "at least in some cases, discovery should be permitted into [hybrid fact and non-reporting expert] witnesses' communications with attorneys, in order to prevent, or at any rate expose, attorney-caused bias." *Id.* at *10. This is so, the Court explained, because a party is entitled to know whether a fact witness testifying about his own personal knowledge has been improperly influenced by opposing counsel's opinions and theories. *See id.* Applying this reasoning, the Court compelled production of "all documents and communications that [two hybrid fact and expert witnesses] considered—that is, generated, saw, read, reviewed, and/or reflected upon— . . . regardless of whether the documents ultimately affected their analysis." *Id.* at *11. The Court also permitted the experts to be re-deposed "regarding their communications with attorneys," because "[i]f their communications with counsel were protected, any potential biases in their testimony regarding the causes of the fire would be shielded from the fact-finder." *Id.* at *10, *12.

Similarly, in *Pacificorp v. Northwest Pipeline GP*, the Court declined to alter its order requiring disclosure of communications between plaintiff's counsel and the plaintiff's hybrid fact and non-reporting expert employee witnesses, explaining that "coaching from the attorney

concerning the party's legal theory and the expert's opinion testimony could bleed over and affect the witness' recitation of her underlying factual observations." No. 3:10-cv-00099-PK, 2012 WL 13195528, at *1, *3 (D. Or. Nov. 6, 2012); *see also Ayotte v. Nat'l Basketball Ass'n*, 22-cv-9666-VSB-RWL, 2024 WL 3409027, at *2 (S.D.N.Y. July 15, 2024) (noting that "[a]mong the dozen or so published decisions analyzing the issue, ones can be found requiring attorney communications with non-retained experts to be produced, and others, though fewer, can be found denying production" and collecting cases).

The plaintiffs counter with two cases where courts protected communications between counsel and potential experts from disclosure, even though those witnesses "also [had] knowledge of the underlying facts and serve[d] as fact witnesses." ECF 16, at 4. Both cases, however, are distinguishable. In *Pipeline Productions, Inc. v. Madison Companies, LLC*, the Court held that the plaintiff had not waived work-product protection over communications between its counsel and two witnesses who were first designated as potential fact witnesses and later as non-retained expert witnesses as well. *See* No. 15-cv-4890-KHV-ADM, 2019 WL 3973955, at *1, *7-8 (D. Kan. Aug. 22, 2019). But the Court noted that it was evaluating the defendant's arguments "exactly as [the defendant] ha[d] raised them—specifically, whether [the plaintiff] effected a blanket waiver of work-product protection as to all of the documents in question based solely on the broad-brush, categorical legal principles asserted by [the defendant]," which "largely overlook[ed] key governing legal principles." *Id.* at *4. Because the defendant's "sole basis" for asserting waiver by designation was the claim that Rule 26(b)(4)(C) abrogated protections over communications between attorneys and non-reporting experts—a contention contradicted by the Civil Rules Advisory Committee's notes to the 2010 amendments—the Court concluded that the defendant

had not met its burden to establish waiver. *Id.* at \*6-8 (describing the defendant's argument as "categorical and cursory").

Here, by contrast, Kidde has met its burden to show that disclosure of the opinion work product in the emails is warranted because "'mental impressions are at issue'" and "'the need for the material is compelling'"—namely, to "rectify [the] unfair advantage gained by [the plaintiffs] from [their] conduct." *Sanmina Corp.*, 968 F.3d at 1124-25 (quoting *Holmgren*, 976 F.2d at 577). Assigning little weight to Fleming's disclaimer of reliance on the communications during his deposition, Kidde contends, and the Court agrees, that the communications "go to whether and how plaintiffs may have sought to influence the testimony of a third-party fact witness prior to soliciting that testimony," and bear on "any bias or prejudice such communications may have introduced into Mr. Fleming's testimony." ECF 5, at 7-8; *cf. Sanmina Corp.*, 968 F.3d at 1124-25 (limiting the scope of the waiver to factual work product because (1) the implicit waiver had not led to any apparent "unfair advantage," and (2) the plaintiff had "provide[d] no reason why the scope of [the] implied waiver should encompass the opinion work product," and had failed to explain the salience of the attorneys' "'mental impressions, conclusions, opinions or legal theories'" (quoting *Hickman*, 329 U.S. at 508)); *Trading Techs. Int'l, Inc. v. IBG*, No. 10-cv-715, 2020 WL 12309208, at \*2 (N.D. Ill. Sept. 14, 2020) (finding that expert's "percipient knowledge of this case is inextricably linked to the opinions he offers about hypothetical non-infringing alternatives" and that "[h]e is therefore a hybrid fact and opinion witness not covered by work product protections and whose communications with counsel are not privileged").

*In re Paraquat Products Liability Litigation* is also distinguishable. No. 21-md-3004-NJR, 2022 WL 17688341 (S.D. Ill. Dec. 15, 2022). There, the Court considered a motion to reopen a deposition of the defendant's former employee to question him about communications he had with

defendant's counsel during breaks in his deposition. *See id.* at *2. The witness had been disclosed first as a fact witness and later as a non-retained expert "out of an abundance of caution." *Id.* at *1. The plaintiffs argued that "they should be permitted to explore defense counsel's communications with [the witness] in order to expose any attorney-caused bias, considering [the defendant] wants to present [the witness] as a fact witness whom its own attorneys represent." *Id.* at *3. The defendant countered that "any communications with him in preparation for his deposition are covered by attorney-client privilege." *Id.* Since the Court determined the witness to be "more like a fact witness than a non-reporting expert," as he was "not offering any expert testimony and . . . did not prepare any opinions for [the] case," the Court concluded that attorney-client privilege applied. *Id.* at *5 (observing that the witness would not be testifying as to "the truth of the matter asserted," but rather just "his recollections of his understanding of certain . . . issues nearly 40 years ago," and that he was thus "unlike a typical hybrid witness, *e.g.*, a treating physician, who [would] opine on the actual causes of an injury in addition to the facts").

At first blush, the facts of *Paraquat Products* seem similar to the facts in this case, as Fleming is also testifying as a fact witness. Absent from the *Paraquat Products* decision, however, is the concern for gamesmanship present here. The plaintiffs chose to bring Fleming into the case as a fact witness after communicating with him about their theories, raising the potential for "attorney-caused bias." *Sierra Pac. Indus.*, 2011 WL 2119078, at *10 ("[I]t is even more important that a witness who is testifying regarding his own personal knowledge of facts be unbiased."). Fairness now mandates that their communications with him, which may or may not have influenced his testimony, be disclosed to Kidde. This is so especially given the nature of his relation to the litigation, as Fleming is acting as a fact witness based on his participation on a committee of Underwriters Laboratories, Inc., which "sets the standards and protocols for

laboratory testing of home smoke alarm products." ECF 3, at 2-3. Though Fleming is not formally designated as an expert, his position on that committee may give him "a cloak of independence and lack of bias" that retained experts and non-retained party employee witnesses might not enjoy. *See Ayotte*, 2024 WL 3409027, at *3. Under these circumstances, "the need for determining the extent to which, if any, [the plaintiffs'] attorney may have influenced [Fleming's] testimony is more acute." *See id.*; *Trading Techs. Int'l, Inc.*, 2020 WL 12309208, at *2.

In short, the plaintiffs have waived their privilege against disclosure of work product contained in their counsels' emails with Fleming, and they are not entitled to an order quashing Kidde's document subpoena.

## CONCLUSION AND ORDER

For the foregoing reasons, the plaintiffs' motion, ECF 1, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: May 16, 2025